J.S36031/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.S., A MINOR, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.F.M. A/K/A D.S., MOTHER, | : | |
| | : | No. 3609 EDA 2013 |

Appeal from the Order Entered November 14, 2013
In the Court of Common Pleas of Philadelphia County
Family Court No(s).: 51-FN-381481-2009
CP-51-AP-0000651-2013
CP-51-DP-0001847-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.S., A MINOR, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.F.M. A/K/A D.S., MOTHER, | : | |
| | : | No. 3611 EDA 2013 |

Appeal from the Order Entered November 14, 2013
In the Court of Common Pleas of Philadelphia County
Family Court No(s).: 51-FN-381481-2009
CP-51-AP-0000626-2013
CP-51-DP-0001205-2011

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED AUGUST 08, 2014**

---

[*] Former Justice specially assigned to the Superior Court.

D.F.M. a/k/a D.S. ("Mother") appeals from the orders entered in the Philadelphia County Court of Common Pleas on November 14, 2013, terminating her parental rights to her twin sons, A.J.S.[1] and D.M.S.[2] (collectively "Children"), born May 5, 2008, and changing Children's goal to adoption.[3] The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> On [May 5, 2008], [t]he Department of Human Services [("DHS")] learned that [Mother] prematurely gave birth to twin boys, [Children], at Children's Hospital of Philadelphia. [Children] were exposed to illegal drugs during the pregnancy and were hospitalized after birth for three weeks for observation.
>
> The [DHS] reports show a lengthy history with the family due to allegations of ongoing substance abuse by [Mother. DHS] obtained information of numerous eviction notices and shut off notices for utility services at the family home.
>
> &ast; &ast; &ast;
>
> On June 11, 2011, [DHS] learned the child, D.S., suffered abrasions to his face and bruises on his body which appeared to be at different stages of healing. Upon a visit to Children's Hospital of Philadelphia, it was determined that D.S.'s condition was post-concussion

---

[1] A.J.S. and A.S. are the same child.

[2] D.M.S. and D.S. are the same child.

[3] These appeals were consolidated *sua sponte* by order of this Court on January 28, 2014.

associated with self-injuring symptoms and symptoms of being developmentally delayed, with delayed gross motor skills and speech delays. The primary care physician reported D.S.'s parents failed to comply with the recommendation of Early Intervention services.

On June 12, 2011, [DHS] did a home assessment of [G.S. ("Father")][4] and [Mother] and found the home did not have proper utilities. [DHS] obtained an Order of Protective Custody [("OPC")].

A shelter care hearing was held on June 16, 2011, [following which the Master] lifted the OPC and ordered [ ] D.S. to be temporarily committed to [DHS]. [ ] D.S. was placed in the care of a family member. It was reported [Mother] had a history of drug abuse and [Father] used drugs in front of [Children].

An adjudicatory hearing was held on [June 21, 2011]. D.S. was [deemed] dependent and committed [ ] to [DHS]. The [c]ourt referred [Mother] to the [c]linical [e]valuation [u]nit for a forthwith drug screen, dual diagnosis, assessment and monitoring. Both parents were ordered to the Achieving Reunification Center (ARC) program for reunification services.

On September 3, 2011, [DHS] received a General Protective Services ["GPS"] report which alleged [Mother] was under the influence of drugs and was causing confusion in the home where [Children] were located. A substantiated report alleged that [Mother] and [Father] were using heroin in front of [Children]. A family member visited the home and removed [Children] from the home. The family member refused to return [Children].

On September 8, 2011, [DHS] learned [Mother] was incarcerated in prison in Delaware [C]ounty for [a] probation violation for testing positive for drugs. It was also alleged [Father] was incarcerated [ ].

---

[4] Father is not a party to this appeal.

On September 21, 2011, [DHS] obtained an [OPC] for A.S.

An initial permanency review hearing was held for [ ] D.S. on September 21, 2011 [ ]. The [c]ourt ordered D.S. to remain committed to [DHS]. The [c]ourt received a report of noncompliance from [CEU] regarding [Mother's] court ordered drug screens.

A shelter care hearing was held for [ ] A.S. on September 22, 2011. [A.S.] was adjudicated dependent and committed to DHS on October 3, 2011.] The [c]ourt lifted the OPC and ordered the temporary commitment to [DHS] to stand. [Neither Mother] nor [Father] attended the hearing.

A permanency review hearing was held on December 13, 2011 for [ ] A.S. The [c]ourt ordered [Children] to remain as placed and committed to [DHS]. [Mother and Father] remain incarcerated.

On April 23, 2012, [Father] pled guilty to criminal charges of theft and was sentenced to a maximum of 23 months [sic] incarceration. [Father] had a lengthy history of incarcerations from 2006 to present.

A Family Service Plan [("FSP")] meeting was held by [DHS]. The [FSP] objectives for the parents were (1) to continue to occupy suitable housing for family with suitable space, heat and all other operable utilities, (2) to achieve and maintain recovery from drug and/or alcohol problems (3) to sign authorization forms to allow the release of copies of the evaluation and progress reports (4) to comply with all treatment recommendation [sic] including therapy and/or medications as prescribed. The objectives specifically identified for [M]other were (1) continue to attend drug/alcohol program and comply with requirements, (2) participate in mental health evaluation and treatment and (3) to maintain employment.

The matter was then listed on a regular basis . . . and evaluated for the purpose of determining or reviewing the permanency plan of the child [sic] with the goal of reunification of the family.

> In subsequent hearings, the DRO's [sic] reflect the [c]ourt's review and disposition of evidence presented addressing the lack of compliance with suitable housing, and drug and alcohol treatments.

Trial Ct. Op., 2/6/14, at 2-3 (unpaginated). We add that since 2011, Children have lived with their paternal grandmother. ("paternal grandmother").

On October 29, 2013, DHS filed petitions to terminate Mother's parental rights to Children. The petitions alleged grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Following a hearing on the petitions on November 14, 2013, the trial court granted DHS's petitions, changed Children's goals to adoption, and terminated Mother's parental rights. Mother timely appealed on December 13, 2013.[5]

Mother raises the following issues for our review:

> 1. Did [DHS] sustain [its] burden that [Mother's] rights should be terminated?

> 2. Did the trial court err in determining that it was in the best interest of [Children] to terminate [Mother's] parental rights by finding there was no bond between [Children] and [Mother].

Mother's Brief at 5.

Our standard and scope of review is well-established:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual

---

[5] Mother and the trial court complied with Pa.R.A.P. 1925.

- 5 -

findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). "[O]ur standard of review requires [u]s to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

Furthermore:

Termination of parental rights is controlled by statute. *See* 23 Pa.C.S.A. § 2511 . . . . Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *Id.*

*In re L.M.*, 923 A.2d at 511 (some citations omitted).

We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth

of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child. However, the Commonwealth does not have an obligation to make such efforts indefinitely. The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered.

*In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006) (citations omitted).

"Where an incarcerated parent faces termination of parental rights, it is critical that the fact of incarceration and the practical limits it imposes on the parent/child relationship not obscure the focus of the statutory inquiry." *In re P.S.S.C. & P.D.S.C.*, 32 A.3d 1281, 1285 (Pa. Super. 2011). Furthermore, this Court has held:

- 7 -

> "[U]nder 23 Pa.C.S.[ ] § 2511(a)(1), incarceration alone cannot support termination due to a parent's failure to perform parental duties. Moreover, a parent's absence and failure to support a child due to incarceration is not conclusive on the issue of whether the parent has abandoned the child. Nonetheless, a parent's responsibilities are not tolled during incarceration, and therefore the court must inquire whether the parent utilized those resources available while he or she was in prison to continue a close relationship with the child.

*Id.* at 1286 (citations omitted).

The trial court found that DHS presented sufficient grounds to terminate Mother's parental rights under the following provisions of Section 2511:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the

conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

(**b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a).  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In her first issue, Mother argues DHS failed to present sufficient evidence in support of termination pursuant to any of the subsections of Section 2511(a). Mother's Brief at 13. Specifically, she claims that she never evidenced a settled purpose of relinquishing her parental rights to Children. *Id.* at 12. She states that she completed most of her FSP goals, and was actively completing the remaining goals, was compliant with her probation, including random drug screens, was enrolled in a drug program, and had re-engaged in mental health treatment. *Id.* She concedes, however, that she had only been re-engaged in mental health treatment for a few months, but claims that she needed to find suitable housing after being released from prison before she could seek mental health treatment. *Id.* at 13.

Because we may affirm the trial court's decision as to any subsection of Section 2511(a), we focus our analysis on whether the trial court properly terminated Mother's rights pursuant to Section 2511(a)(8). Our Court has explained:

> termination under subsection (a)(8) does not require evaluating [a parent's] willingness or ability to remedy the conditions that initially caused placement, nor does it require an evaluation of the availability or efficacy of [DHS] services. Though the state is required to make **reasonable efforts** to promote family stability and preserve family unity we cannot require [DHS] to extend services beyond what our legislature has deemed a reasonable time after state intervention or require Herculean efforts by [DHS] or other agencies after the goal has changed to adoption. Nor, in the interests of the children, should we. The state's interest in preserving

> family unity must be weighed along with the state's interest in protecting children, and a child's right to a healthy and stable environment. A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citations omitted) (emphasis in original).

In support of the petitions to terminate Mother's parental rights, DHS presented the testimony of Barbara Forest, DHS social worker. Ms. Forest testified that D.S. and A.S. were adjudicated dependent in June and September 2011, respectively.[6] N.T., 11/14/13, at 11. Although Mother has completed some of her FSP objectives, she did not have appropriate housing, had not provided verification of employment, and was not engaged in mental health treatment. *Id.* at 18, 21. Mother had also failed to participate in random drug screens, and, when she did appear for drug testing, she has had positive results. *Id* at 12-14. Ms. Forest testified that, at the time of the hearing, she was still not comfortable recommending that Mother have unsupervised visitation with Children. *Id.* at 20. Ms. Forest recommends that Children be adopted by their [paternal grandmother] with whom they have lived since 2011. *Id.* at 21. Paternal grandmother is bonded with Children, meets their basic needs, and provides them with stability. *Id.* at 21-22. Ms. Forest reiterated her recommendation that the

---

[6] In fact, A.S. was adjudicated dependent on October 3, 2011.

goal be changed to adoption because, even though Mother has completed some of her FSP objectives, "there has been a long time of non-compliance" and Children need permanency. *Id.* at 23.

In the instant case, the trial court made the following findings:

> Mother's repeated incarceration prevented her from completing her objectives for reunification with [Children]. Furthermore, testimony revealed [M]other's whereabouts were frequently unknown for long periods of time.

> \*     \*     \*

> . . . D.S. and A.S. have been in foster care for respectively for [sic] twenty-nine and twenty-six months. The testimony established [Children] are in a stable environment and adoption was in the best interest [sic] of [Children].

> \*     \*     \*

> The testimony established [M]other neglected to meet the protective parental care needs for [Children]. Furthermore, testimony evidenced and confirmed that [M]other has an extensive criminal history. Moreover, testimony revealed [M]other's repeated incarceration caused instability in the care of [Children].

> Furthermore, testimony established [M]other admitted a history of drug usage and mental health issues. Lastly, [M]other repeatedly failed to participate in court ordered random drug screens.

Trial Ct. Op. at 4-5 (citations to the record omitted).

The trial court's conclusion that Mother has not, within the requisite statutory period, resolved the issues that led to Children's placement is adequately supported by the record. The testimony and record evidence establishes that Children have been in placement in excess of two years, and

Mother has not advanced beyond having supervised visitation with Children. We acknowledge Ms. Forest's testimony that Mother has completed some of her FSP objectives. However, it is undisputed that Mother has not met all of the goals established by DHS, including consistently participating in mental health, drug and alcohol treatment, and obtaining employment. On appeal, Mother seeks to have this Court re-weigh the evidence. Our standard of review, however, does not permit us to invade the credibility determinations of the trial court and re-weigh the evidence, absent an abuse of discretion. *See In re S.P.*, 47 A.3d at 826.

As we find there is competent evidence in the record to support the trial court's credibility and weight determinations, we find no abuse of the court's discretion in concluding that DHS sustained its burden with regard to Section 2511(a)(8). *See In re Adoption of R.J.S.*, 901 A.2d at 507; *In re Adoption of M.E.P.*, 802 A.2d at 1276.

Mother's second issue on appeal challenges the trial court's determination that termination of her parental rights pursuant to Section 2511(b) is in Children's best interests. Mother notes that the trial court made a specific finding as to the nature of the relationship between her and Children when it stated, "I have no doubt that Mother loves her children. I have no doubt that the children love Mom." Mother's Brief at 16 (citing N.T. at 62). But, she claims that the court "never made a decision as to how the

boys would be affected by the termination of [Mother's] parental rights."

Mother's Brief at 16.

With regard to Section 2511(b), this court has stated:

> Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b).  In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).  This

Court has explained that the focus in terminating parental rights under

Section 2511(a) is on the parent, but it is on the child pursuant to Section

2511(b).  *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008).

In analyzing the parent-child bond, the court is not required to order that an

expert perform a formal bonding evaluation.  *In re K.K.R.-S.*, 958 A.2d

529, 533 (Pa. Super. 2008).

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.  The mere existence of an emotional bond does not preclude the termination of parental rights.  *See  In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child).

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (some citations omitted).

With respect to Children's best interests, DHS presented the testimony of Adrianna Garcia, a social worker at Children's Choice and Children's caseworker. Ms. Garcia testified that Children are bonded with Paternal Grandmother. N.T. at 29-30. She testified that she has observed Mother's visits with Children and that Mother struggles to discipline them in an appropriate way. *Id.* at 31. She also suspected Mother was under the influence of drugs or alcohol at one visit. *Id.* at 32. Ms. Garcia believes that, "[W]hile [Children] do know who their Mother is and do have a connection with her, they have a strong bond with [Paternal Grandmother], who has been providing for them. If she was no longer in their lives, they would struggle more to proceed." *Id.* at 32-33. Ms. Garcia does not believe it would cause Children irreparable harm to terminate Mother's parental rights. *Id.* at 33-34.

The trial court's opinion belies Mother's contention that it failed to address the effect that termination would have on Children. The trial court concluded that termination of Mother's parental rights "was in the best interests of [Children]" and changing Children's goal to adoption would "provide[ ] longterm stability and permanency for [Children]." Trial Ct. Op. at 6. Specifically, the court found:

> Testimony established [M]other's untreated mental health issues and drug abuse presented safety concerns for [Children]. The testimony of the social worker revealed concerns regarding [Mother's] behavior during visits with [Children].

. . . In the instant matter, the testimony established that the child [sic] would not suffer any irreparable emotional harm if [M]other's parental rights were terminated. [Children] have bonded with their foster parent, [Paternal Grandmother]. Testimony described the relationship between [Children] and their foster parent as very close and strong. Furthermore, testimony established their foster parent provides longterm stability and permanency for [Children].

Lastly in the instant matter, the social worker for [DHS] testified credibly. Her testimony regarding [M]other's history of drug abuse and failure to seek mental health treatment was consistent.

\* \* \*

. . . [T]he court finds that its ruling will not cause [Children] to suffer irreparable harm and it is in the best interest of the child [sic] as a result of testimony regarding the child's [sic] safety, protection, mental, physical and moral welfare, to terminate the parental rights.

*Id.* (citations omitted).

The trial court did not abuse its discretion in finding the lack of a beneficial bond between Mother and Children and that Children's needs and welfare will be best served by terminating her parental rights pursuant to Section 2511(b). Although the court found that Mother and Children love each other, and that Mother attempted to maintain a relationship with Children by attending some visitation with them, "the mere existence of an emotional bond does not preclude termination of parental rights." *See In re N.A.M.*, 33 A.2d at 103. Therefore, the trial court did not abuse its discretion in determining that the termination of Mother's parental rights

would be in the best interests of Children. *See id.*; *In re Z.P.*, 994 A.2d at 1121; *In re Adoption of M.E.P.*, 802 A.2d at 1276.

For all the foregoing reasons, we affirm the trial court's orders granting the petitions to terminate Mother's parental rights and changing Children's goals to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2014